BEFORE THE
UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE CONCRETE & CEMENT ADDITIVES ANTITRUST LITIGATION | MDL DOCKET NO. _____ |

**BRIEF IN SUPPORT OF PLAINTIFF SMBA CONSTRUCTION, LLC'S MOTION FOR TRANSFER OF RELATED ACTIONS TO THE SOUTHERN DISTRICT OF NEW YORK FOR CENTRALIZED PRETRIAL
PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407**

Plaintiff SMBA Construction, LLC ("Plaintiff") in the action captioned *SMBA Construction, LLC v. Sika AG et al.*, Case No: 1:23-cv-10875 (the "*SMBA* Action," filed in the United States District Court for the Southern District of New York on December 14, 2023) respectfully submits this brief in support of its motion to transfer and centralize for pretrial purposes all related actions to the Honorable Dale E. Ho in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1407.

### BACKGROUND

To date, five antitrust class actions – two, including Plaintiffs' case, brought on behalf of indirect purchasers of concrete and cement additives and admixtures ("CCAs"), and three brought by direct purchasers[1] of CCAs, collectively referred to here as the "Related Actions" – have been filed in the Eastern District of Pennsylvania and the Southern District of New York against the world's dominant CCA producers alleging that they conspired to fix, raise and maintain at supra-competitive levels the prices of CCAs sold in the United States.[2] All the Related Actions filed to

---

[1] While direct- and indirect-purchaser class claims would ultimately be tried separately, direct and indirect cases routinely proceed together for pretrial proceedings.

[2] *See* the attached J.P.M.L Rule 6.1(b)(ii) Schedule of Actions.

1

date allege violations of federal antitrust law, and two of the Related Actions (Plaintiff's case and the *Lakewood* case filed in the Eastern District of Pennsylvania) also allege violations of state antitrust, unfair-competition, and consumer-protection laws).

Transfer and pretrial centralization of the Related Actions before Judge Dale E. Ho in the Southern District of New York is appropriate because it is the best way to ensure the efficient resolution of this litigation. The Related Actions all arise out of the same factual events and allege nearly identical conduct by the same defendants and their co-conspirators, namely a conspiracy to fix CCA prices.

Transfer of the Related Actions to one forum is essential so that they can be centralized for pretrial proceedings, which will eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judges in the two districts where the Related Actions have so far been filed. Thus, transfer and consolidation will further the convenience of the parties and witnesses and promote efficiency and judicial economy.

The Southern District of New York is the most appropriate transferee forum for the Related Actions because:

1. One defendant, Cinven, Inc., is headquartered in midtown Manhattan, and New York City is an easily-accessible location for the foreign defendants in this case, meaning that there are already witnesses and evidence located in the Southern District of New York, and that the non-U.S. defendants in France, England, Switzerland and Germany and their witnesses can easily travel to, and readily be available in, the district for depositions, hearings and trial;

2. The Panel has consistently recognized that the Southern District of New York has expertise

in dealing with complex, multidistrict antitrust litigation, and the resources needed for the prompt and efficient management of the Related Actions, and Judge Ho does not currently have a multidistrict litigation on his docket,[3] and civil caseload statistics support transfer of the Related Actions to the Southern District of New York; and

3. It is a convenient and accessible location for all parties and witnesses in the Related Actions, and some of the domestic defendants are in, or near to, the greater New York City region.

Accordingly, all Related Actions should be transferred and centralized in the Southern District of New York pursuant to 28 U.S.C. § 1407 for pretrial proceedings.

## ARGUMENT

The Related Actions should be transferred and centralized for pretrial proceedings pursuant to 28 U.S.C. § 1407(a), which permits transfer and centralization of cases meeting three requirements: (1) the cases "involve[e] one or more common questions of fact;" (2) transfer and centralization "will promote the just and efficient conduct of [the] actions;" and (3) transfer and centralization will further "the convenience of parties and witnesses." Transfer and centralization of the Related Actions in the Southern District of New York will satisfy each of these requirements.

### A. Transfer and Centralization of the Related Actions is Appropriate Because the Related Actions Involve Overlapping Questions of Fact and Law

Civil actions pending in different district courts and involving overlapping factual and legal issues are particularly appropriate for transfer and centralization in a single district, and the Panel

---

[3] *See* MDL Statistics Report – Distribution of Pending MDL Dockets by District (as of December 15, 2023), *available at* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-December-15-2023.pdf (last visited Dec. 19, 2023)).

has consistently determined that related antitrust cases satisfy § 1407's requirements.[4] The Related Actions share many common questions of fact and law, as well as substantially similar allegations. Each of the Related Actions alleges that the defendants and their co-conspirators conspired to fix the prices of CCAs sold in the United States, in violation of federal antitrust laws, and with respect to the indirect purchaser cases, state antitrust, unfair-competition, or consumer protection statutes. Therefore, the Related Actions should be transferred and centralized in one judicial district.

The common questions before the courts in the Related Actions include the following:

(a) The identity of the conspiracy's participants;

(b) The duration of the conspiracy;

(c) The overt acts that the defendants and their co-conspirators took in furtherance of the conspiracy;

(d) Whether the alleged actions of the defendants and co-conspirators caused injury to the property of the Plaintiff and the members of the alleged direct and indirect purchaser classes; and

(e) The appropriate measures of damages sustained by Plaintiff and members of the direct and indirect purchaser classes.

These common questions give the Panel good reason to centralize the Related Actions in a

---

[4] *See, e.g., In re Aluminum Warehousing Antitrust Litig.*, 988 F. Supp. 2d 1362, 1363 (J.P.M.L. 2013) ("*Aluminum*") (transferring related antitrust cases to the Southern District of New York and finding centralization appropriate because "[a]ll actions share factual questions arising from allegations that defendants violated federal antitrust law . . ."). *See generally* Federal Judicial Center, Multidistrict Litigation Manual (Fourth) § 5:1 (2010) ("Antitrust actions present a category of actions that the Panel almost inevitably orders transferred if there are multiple actions pending in different districts.").

single judicial district.[5]

### B. Transfer and Centralization for Pretrial Proceedings Will Promote the Just and Efficient Conduct of the Related Actions

Transfer and centralization of the Related Actions for pretrial proceedings will also "promote the just and efficient conduct of [the] actions" in accordance with § 1407(a). The Related Actions will likely involve many of the same pretrial issues, such as those concerning the nature and scope of discovery and the sufficiency of Plaintiff's allegations. If both districts were forced to resolve these issues in separate pretrial proceedings, scarce judicial resources would be needlessly wasted. Moreover, there would be a substantial likelihood that such duplicative proceedings would result in inconsistent rulings, especially regarding certification of the direct and indirect purchaser classes.[6] Transfer and centralization is necessary here to avoid these inefficiencies and potential inconsistencies and will promote the just and efficient resolution of the Related Actions.

### C. Transfer and Centralization for Pretrial Proceedings Will Further the Convenience of Parties and Witnesses

The Panel has found that § 1407's convenience requirement is met when transfer and centralization of cases with overlapping factual and legal issues will prevent duplicative discovery and inconsistent pretrial rulings.[7] Here, transfer and centralization of the Related Actions for

---

[5] *See, e.g., Aluminum*, 988 F. Supp. 2d at 363 (transferring related antitrust cases to the Southern District of New York and finding centralization appropriate because "[a]ll actions share factual questions arising from allegations that defendants violated federal antitrust law . . .").

[6] *See, e.g.*, *In re: Treasury Auction Securities Antitrust Litig.*, 148 F. Supp. 3d 1360, 1362 (J.P.M.L. 2015) ("*Treasuries*") (transferring related actions to the Southern District of New York, holding that "[c]entralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel and the judiciary.")

[7] *See, e.g.*, *In re Fresh & Process Potatoes Antitrust Litig.*, 744 F. Supp. 2d 1381, 1382 (J.P.M.L.

pretrial proceedings will also serve the "convenience of the parties and witnesses" in accordance with § 1407.[8]

Here, convenience requires transfer and centralization. Similar allegations of anticompetitive conduct in each of the Related Actions will require duplicative discovery and pretrial proceedings unless they are transferred and centralized in a single district for pretrial purposes (even though the direct and indirect purchaser claims would eventually be tried separately). To prove the antitrust claims alleged in the Related Actions, plaintiffs in all those cases (both direct and indirect) will seek from defendants the same documents and transactional data, and seek to depose many of the same defense and non-party witnesses.

There is no reason the parties should be required to respond to multiple pretrial motions and discovery requests, or for parties and witnesses to travel throughout the country to appear in multiple proceedings. Transfer and centralization will solve these problems: it will permit the transferee judge to craft a single, unified pretrial program that minimizes the inconvenience and overall expense for all parties and witnesses. While direct and indirect purchaser class actions will be tried separately, the pretrial proceedings are for practical purposes the same.[9]

---

2010) ("These actions share factual questions relating to alleged anticompetitive conduct in the market for fresh and process potatoes. Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary.").

[8] *See, e.g.*, *In re Commodity Exchange, Inc. Gold Futures & Options Trading Litig.*, 38 F. Supp. 3d 1394, 1395 (J.P.M.L. 2014) ("*Gold*") (transferring cases to the Southern District of New York, holding that centralization in that district "will eliminate duplicative discovery . . . prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary").

[9] MDL transferee courts have decided at the same time class certification for separate direct and indirect purchaser classes. *See, e.g.*, *In re Pork Antitrust Litig.*, MDL No. 2988, 2023 WL 2696492 (D. Minn. Mar. 23, 2023) (certifying direct purchaser class and two different indirect purchaser classes).

**D. The Southern District of New York is the Most Appropriate Transferee Forum**

The Panel considers a variety of factors when determining the proper venue for transfer and centralization of related cases. The factors assessed include: (1) the familiarity and expertise of the transferee district with the underlying issues in the litigation, and the judicial caseload and case disposition statistics in the potential transferee districts; (2) the location of the parties, witnesses and documents; and (3) the accessibility and convenience of the proposed transferee district to the parties and witnesses. All these factors support transfer to and centralization of the Related Actions to Judge Ho in the Southern District of New York, and counsel against transfer to another district.

1. <u>The Panel Routinely Selects the Southern District of New York to Efficiently Adjudicate Complex Antitrust Cases, and Judicial Caseload Statistics Further Support Transfer of the Related Actions to the Southern District of New York</u>

The Panel regularly chooses the Southern District of New York as the appropriate forum to efficiently adjudicate complex antitrust class actions.[10] The Panel also often considers the respective caseloads of the proposed transferee district courts, and each's ability to move the actions forward. Here, the numbers support transfer of the Related Actions to the Southern District of New York: Judge Ho does not have any pending MDLs on his docket,[11] and the most recent statistical report by the Federal Judicial Center shows that the Southern District of New York's 44 Article III judges' civil caseloads are roughly on par with those of the 30 Article III judges in the

---

[10] *See, e.g., Treasuries*, *Aluminum*; *Gold*; and *In re Credit Default Swaps Antitrust Litig.*, 978 F. Supp. 2d 1374 (J.P.M.L. 2013) ("*CDS*"). While the Panel also often transfers related cases to judges who have prior judicial experience handling similar cases, both potential transferee judges here are relative newcomers to the federal bench. As such, the Eastern District of Pennsylvania does not have an advantage over the Southern District of New York with respect to this factor.

[11] *See In re Wal-Mart ATM Fee Litig.*, 785 F. Supp. 2d 1380, 1381 (J.P.M.L. 2011) (transferring related cases to a judge "who is not currently presiding over another multidistrict litigation docket.").

Eastern District of Pennsylvania.[12]

2. <u>Defendants, Witnesses and Evidence Are Located in and Around the Southern District of New York</u>

In deciding which district is appropriate for transfer and centralization, the Panel considers both the location of defendants and the nexus between the evidence and witnesses relevant to the related actions and the location of the MDL proceeding.[13] Here, defendant Cinven, Inc. is headquartered in the Southern District of New York, and several other U.S. defendants are located within 100 miles of New York City. Moreover, the foreign defendants located in France, Germany, England and Switzerland can more easily travel to New York than Philadelphia. Witnesses and documents are as likely, and perhaps more likely, to be in the Southern District of New York; no other potential transferee district has a genuine advantage over the Southern District of New York with regards to this factor. But as outlined above, several other factors weigh in favor of transferring the Related Actions to the Southern District of New York.

3. <u>The Southern District of New York is the Most Suitable and Convenient Forum for the Related Actions</u>

In choosing an appropriate transferee district, the Panel also considers the convenience of the parties, their counsel, and potential witnesses.[14] This factor also favors transfer of the Related

---

[12] *See* Table C-1, U.S. District Courts, Civil Federal Judicial Caseload Statistics (Sept. 30, 2023), *available at* https://www.uscourts.gov/sites/default/files/data_tables/jb_c1_0930.2023.pdf (last accessed on Dec. 18, 2023).

[13] *See, e.g.*, *CDS.*, 978 F. Supp. 2d at 1375 (selecting Southern District of New York because "the district has a strong connection to this litigation, inasmuch as most defendants are based there"); *In re Municipal Derivatives Antitrust Litig.*, 560 F. Supp. 2d 1386, 1387 (J.P.M.L. 2008) (selecting the S.D.N.Y. because "relevant documents and witnesses are likely to be found there").

[14] *See, e.g.*, *In re Initial Public Offering (IPO) Secs. Litig.*, 277 F. Supp. 2d 1375, 1377 (J.P.M.L. 2003) (transferring actions to the Southern District of New York because the district is "conveniently located for many parties and witnesses"); *In re Publication Paper Antitrust Litig.*, 346 F. Supp. 2d 1370, 1372 (J.P.M.L. 2004) (selecting the transferee forum because "the district is a geographically convenient location, given the location of the principal defendants and potential

Actions to the Southern District of New York, which is an easily-accessible location served by three of the country's largest airports (including two of the nation's biggest international airports likely to be used by the numerous European witnesses).  The Southern District of New York has thousands of hotel rooms, ample office space and a well-developed support system for legal services.[15]  The Eastern District of Pennsylvania is no more convenient than the Southern District of New York.  The Related Actions should be transferred to the Southern District of New York.

## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Panel transfer and centralize the Related Actions to Judge Dale E. Ho in the Southern District of New York.

Dated: December 19, 2023

Respectfully submitted,

/s/ Robert N. Kaplan
Robert N. Kaplan
Elana Katcher
Matthew P. McCahill
Jason A. Uris
**KAPLAN FOX & KILSHEIMER LLP**
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
Email: rkaplan@kaplanfox.com
Email: ekatcher@kaplanfox.com
Email: mmccahill@kaplanfox.com
Email: juris@kaplanfox.com

*Counsel for Plaintiff-Movant SMBA Construction, LLC*

---

defendants and witnesses.").

[15] *See, e.g.*, *In re WorldCom, Inc. Sec. & ERISA Litig.*, 226 F. Supp. 2d 1352, 1355 (J.P.M.L. 2002) (noting that "a litigation of this scope will benefit from centralization in a major metropolitan center that is well served by major airlines, provides ample hotel and office accommodations, and offers a well-developed support system for legal services.").

9